V.P.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSE MOLINA, STEPHEN O. SPENCER,        )
and ROBERT M. BLIZNICK, on              )
behalf of themselves and all            )
other similarly situated                )
plaintiffs known and unknown,           )
                                        )
                Plaintiffs,             )
                                        )
        v.                              )        No. 05 C 5818
                                        )
FIRST LINE SOLUTIONS LLC,               )
                                        )
                Defendant.              )

## MEMORANDUM OPINION AND ORDER

        Plaintiffs Jose Molina, Stephen Spencer, and Robert

Bliznick are current or former employees of defendant First Line

Solutions LLC (n/k/a First Level Technology, LLC) ("FLT").[1]  FLT

installs, services, and repairs point-of-sale, ATM, and imaging

equipment.  Plaintiffs worked as customer engineers ("CE"), the

FLT employees that installed, serviced, and repaired the

equipment.  Plaintiffs contend they were improperly denied pay,

often including overtime pay, for certain periods that defendant

---

[1]Although Bliznick still works for FLT, to simplify the
presentation, the work of all plaintiffs will generally be
referred to in the past tense.

did not recognize as worktime. This included work allegedly performed before and after their start and end times and during breaks. Plaintiffs also contend they are entitled to additional compensation for when they were on call. Plaintiffs claim willful violations of the Fair Labor Standards Act ("FLSA"), 219 U.S.C. § 201 et seq.; the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105; and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115. The FLSA and IMWL claims are based on violations of statutory provisions, while the IWPCA claim is based on an alleged contractual obligation to pay overtime.

Defendant has moved for summary judgment dismissing the FLSA and IMWL claims to the extent they are based on work performed prior to October 1, 2005, the date defendant contends 49 U.S.C. § 13102 was amended. Defendant contends that, prior to that date, CEs were exempt from the FLSA based on 29 U.S.C. § 213(b)(1), which generally exempts employees covered by the Motor Carrier Act. Defendant contends a similar exclusion applies to the IMWL. Defendant also contends undisputed facts support that on-call time is not compensable. Plaintiffs move to amend their complaint to add a promissory estoppel claim. Plaintiffs also move for permission to send notice of an opt-in collective action regarding the FLSA claims. See 29 U.S.C. § 216(b). As to the state law IMWL and IWPCA claims (and proposed promissory estoppel claim), plaintiffs move for

certification of an opt-out class action pursuant to Fed. R. Civ. P. 23(b)(3). The summary judgment motion will be considered first.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Scott v. Harris, 127 S. Ct. 1769, 1774, 1776 (2007); Scaife v. Cook County, 446 F.3d 735, 738-39 (7th Cir. 2006). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Creditor's Committee of Jumer's Castle Lodge, Inc. v. Jumer, 472 F.3d 943, 946 (7th Cir. 2007); Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Jumer, 472 F.3d at 946; Cady v. Sheahan, 467 F.3d 1057, 1061 (7th Cir. 2006), cert. denied, 127 S. Ct. ___ (June 11, 2007). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324.

Here, the parties agree as to most of the facts that are to be taken as true for purposes of summary judgment. Plaintiffs do not disagree with any of the facts contained in defendant's Local Rule 56.1(a)(3) statement. Defendant only disagrees with a

- 3 -

few of the statements contained in plaintiffs' Local Rule 56.1(b)(3)(C) statement of additional facts. The disagreements and related evidence need only be considered to the extent the facts involved are material.

For purposes of ruling on defendant's motion for summary judgment, the following facts are taken as true. FLT is in the business of installing, servicing, and repairing point-of-sale, ATM, and imaging equipment at customer sites. The three named plaintiffs have worked for FLT as CEs and Spencer has also been a lead technician. Spencer and Molina have not worked for FLT since, respectively, August 13 and August 22, 2005. All three worked exclusively or primarily at customer locations in Illinois. Bliznick has occasionally worked at customer sites in Indiana. On two occasions Molina assisted the CEs in Seattle, Washington and Grand Rapids, Michigan.

CEs are the employees who do the installing, servicing, and repairing of equipment. This frequently involves installing or replacing parts for the equipment. CEs maintain an inventory of commonly used parts called a personal parts kit or PPK. Use of a part from the kit is reported to FLT's parts distribution center in Georgia. Replacement parts for the kit are shipped from the distribution center to an express delivery center in the Chicago area (usually Federal Express, DHL Express, or UPS) where

- 4 -

the CE picks up the parts. A CE commonly picks up replacement parts for his or her PPK at least once a week.

When a CE needs a part that is not in the PPK, the CE places an order with the Georgia distribution center. The order identifies the particular customer and the location of the customer's equipment. The distribution center first attempts to locate a part at a facility or vehicle near the CE. If there is no part in the vicinity, the distribution center special orders the part and has it shipped to a place where the CE picks it up and then delivers it to the customer location and installs it. Such parts are generally shipped via air delivery from a location outside Illinois. Sometimes the shipment is sent directly to the CE's residence or another location selected by the CE, but usually the shipment is to a local terminal of the shipper (usually Federal Express, Airborne Express, or UPS). Most CEs pick up such parts at terminal facilities at least once every other week.

Although not included in defendant's statement of facts, plaintiffs do not dispute the representation in defendant's brief that CEs use motor vehicles when going to shipping terminals and customer locations.

Plaintiffs do not dispute that most of the parts taken to customer locations are owned by FLT and that ownership does not transfer to the customer until completion of the installation.

As to parts owned by third party suppliers, it is undisputed that agreements are in place under which the suppliers authorize CEs to take temporary and exclusive possession of parts for the purpose of delivering those parts to customer sites for installation.

Periodically, CEs are required to be on call. Teams of CEs generally take weekly turns of being on call. Teams can include as little as three or four CEs, meaning a CE will be on call every third or fourth week. CEs may trade on call time. While on call, a CE must be available to respond to a customer by telephone within 15 minutes and be at the customer site within two hours or a longer time agreed upon by the customer. CEs are limited to no more than 40 weeks of on call time per year.

While on call, the CE has to be in an area that has Blackberry and cell phone service and that allows the CE to get to any customer site in his or her territory within two hours. This still allows CEs to visit friends and relatives in such areas, shop, go to restaurants, do household activities, and perform various other activities while on call.

CEs receive availability pay while on call and hourly pay (including applicable overtime) for calls actually made. Records are provided showing how many on call days and actual calls each plaintiff had during the approximately 19-month period from

September 2, 2002 to April 11, 2004. Bliznick was on call 139
days and had calls on 25 (17.99%) of those days. Molina was on
call 150 days and had calls on 16 (10.67%) of those days.
Spencer was on call 188 days and had calls on 45 (23.94%) of
those days.

Plaintiffs submit sufficient evidence supporting the
following additional facts, which must be taken as true for
purposes of defendant's summary judgment motion. Uniform job
descriptions and compensation decisions regarding CEs were made
at a national level for FLT. When CEs accepted a job offer, the
offer included a particular CE job description and a particular
level of compensation. The front page of the job description
included a summary listing of the job title, department, and
person to whom the employee would report. This summary listing
also included the following line: "FLSA (Overtime) Status:
Non-Exempt."

Applicants accepting a job offer were required to sign a
copy of the job description acknowledging that they had received
it. Immediately above the signature line was the following
disclaimer. "This job description is not intended to be all-
inclusive, and may be altered and/or amended at any time by
management. This job description does not constitute a contract
of employment, either expressed or implied, nor does it specify

employment for a given period of time." For purposes of summary
judgment, it is accepted as true that FLT intended that the
applicant would rely upon the information in the job description
when considering the job offer.

CEs were promised that they would be paid overtime.
Also, the Human Resources Department considered the CE position
as not exempt from FLSA overtime provisions. The Human Resources
Department was unaware of any possible Motor Carrier Act
exemption until hearing of it from the attorneys representing
defendant in this litigation. Even if FLT had known that CEs
were formerly in an exempt position, it would still have paid
them overtime in order to offer competitive compensation to
employees.

Exempted from FLSA's overtime requirements are "any
employee with respect to whom the Secretary of Transportation has
power to establish qualifications and maximum hours of service
pursuant to the provisions of section 31502 of Title 49."
29 U.S.C. § 213(b)(1). Defendant contends that, until October 1,
2005,[2] CEs fell under this exception because they were "motor
private carriers" regulated by the Secretary of Transportation in
accordance with 49 U.S.C. § 31502(b). Defendant concedes that

_____

[2]As discussed below, the correct date is August 10, 2005.

- 8 -

CEs are not motor private carriers under the amended definition of motor private carrier (see 49 U.S.C. § 13102(15) (2005)) that went into effect in 2005. The exemption is to be construed narrowly and the burden is on defendant to prove any supporting facts by a preponderance of the evidence. See Yi v. Sterling Collision Centers, Inc., 480 F.3d 505, 506-08 (7th Cir. 2007).

Section 31502(b)(2) of Title 49, both currently and during the prior relevant time period, has provided: "The Secretary of Transportation may prescribe requirements for qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." On August 10, 2005, legislation was enacted amending the definition of "motor private carrier" that had been contained in 49 U.S.C. § 13102(13).[3] Although defendant contends this particular amendment did not go into effect until the federal government's new fiscal year began on October 1, 2005, it cites no provision supporting that the effective date was other than the date of enactment and this

_____

[3]The amended version was recodified as 49 U.S.C. § 13102(15). Defendant concedes that plaintiffs are not motor private carriers under the amended version which contains the additional requirement that the person be transporting goods by commercial motor vehicle. The most general definition of a commercial motor vehicle requires a gross vehicle weight or rating of at least 10,001 pounds. See 49 U.S.C. § 31132(1)(A). CEs have not used vehicles of that size.

- 9 -

court has found no such provision in the legislation. Courts
have consistently treated the amendment as being effective as of
August 10, 2005, the day the legislation was enacted upon
President Bush signing the bill.  See Pub. L. 109-59, Title IV,
subtitle B, § 4142(a), 119 Stat. 1747 (Aug. 10, 2005); Kautsch v.
Premier Communications, 2007 WL 1459694 *2 (W.D. Mo. May 16,
2007); O'Neal v. Kilbourne Medical Laboratories, Inc., 2007 WL
956428 *8-9 (E.D. Ky. March 28, 2007); King v. Asset Appraisal
Services, Inc., 470 F. Supp. 2d 1025, 1030 (D. Neb. 2006);
Musarra v. Digital Dish, Inc., 454 F. Supp. 2d 692, 701 n.19, 703
(S.D. Ohio 2006);[4] Dell'Orfrano v. IKON Office Solutions, Inc.,
2006 WL 2523113 *2 (M.D. Ga. Aug. 29, 2006).

      Spencer worked for FLT until August 13, 2005 and Molina
until August 22, 2005.  There is no contention on summary
judgment that Spencer and Molina did not work any of the
allegedly uncompensated overtime between August 9 and the end of
their employment.  Since this factual issue was not raised by
defendant, plaintiffs were not obliged to present evidence that
they worked overtime during that time period and it must be
assumed that they did.

---

      [4]King, 470 F. Supp. 2d at 1030-31, and Musarra, 454
F. Supp. 2d at 703, hold that the amended definition does not
retroactively apply to work performed prior to August 10, 2005.

Prior to August 10, 2005, "motor private carrier" was defined as follows.

> The term "motor private carrier" means a person, other than a motor carrier, transporting property by motor vehicle when--
> (A) the transportation is as provided in section 13501 of this title;
> (B) the person is the owner, lessee, or bailee of the property being transported; and
> (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102(13) (2002). Section 13501 (which is referenced in § 13102(13)(A)) requires that the transportation be interstate. See Kautsch, 2007 WL 1459694 at *2-3.

Prior to August 10, 2005, five requirements had to be met in order to apply the Motor Carrier Act exemption to a particular employee.

> (1) the person transported property by motor vehicle; (2) the person was engaged in interstate commerce; (3) the person was the owner, lessee, or bailee of the property being transported; (4) the property was being transported for sale, lease, rent, or bailment or to further a commercial enterprise; and (5) the person had some effect on the vehicle's "safety of operation."

Id. at *3.

It has been observed that these requirements will be satisfied for virtually any employee who uses a vehicle during

- 11 -

work as long as the person was engaged in interstate commerce. See Musarra, 454 F. Supp. 2d at 701 n.19. Accord Kautsch, 2007 WL 1459694 at *3; O'Neal, 2007 WL 956428 at *9; King, 470 F. Supp. 2d at 1030. Here, plaintiffs do not dispute that they satisfied all five criteria when transporting to customers parts that had been shipped from out of state.[5] Motor vehicles were used to bring the parts to the customers. Since the parts were being sent from out of state to the customers, the interstate requirement is met. See Bilyou v. Dutchess Beer Distributors, Inc., 300 F.3d 217, 223-24 (2d Cir. 2002) ("Even if a carrier's transportation does not cross state lines, the interstate commerce requirement is satisfied if the goods being transported within the borders of one State are involved in a 'practical continuity of movement' in the flow of interstate commerce. . . . Whether the transportation is of an interstate nature can be 'determined by reference to the intended final destination' of the transportation when that ultimate destination was envisaged at the time the transportation commenced." (citations omitted)); McGee v. Corporate Express Delivery Systems, 2003 WL 22757757 *4

_____

[5]Plaintiffs argue that the shipment of replacement parts for the PPK do not support the interstate transportation requirement because there is insufficient evidence of the shipper's intent. Whether that involves a genuine dispute of material fact need not be decided since there is no dispute regarding the shipper's intent when shipping non-PPK parts for specific customers.

(N.D. Ill. Nov. 20, 2003). Plaintiffs were bailees of the parts they were transporting and the parts were being transported in furtherance of a commercial enterprise. Cf. Kautsch, 2007 WL 1459694 at *5-6. Since driving on public highways, plaintiffs also satisfy the safety of operation requirement. See id. at *6.

Although plaintiffs do not dispute that all the criteria are satisfied based on their delivery and installation of non-PPK parts, they argue the exemption should not be applied. Plaintiffs contend that defendant cannot raise the exemption as a defense because defendant has contracted to treat plaintiffs as non-exempt employees. Similarly, plaintiffs rely on waiver or estoppel based on contractually agreeing to pay overtime. To the extent these arguments fail, plaintiffs argue that the exemption should be limited to work weeks during which an individual plaintiff actually transported a part ordered from out of state and that defendant fails to present evidence supporting when each plaintiff was subject to the exemption.

It is well established that an employee cannot contract to give up nor otherwise waive rights to overtime or the minimum wage that are guaranteed by the FLSA. See Brooklyn Savings Bank v. O'Neil, 324 U.S. 697 (1945); Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728 (1981). Plaintiffs, however, argue that an employer can contract away or forfeit its right to raise an exemption. In other words, while an employee cannot

- 13 -

agree to accept lower wages than required by the FLSA, an employer can agree to pay higher wages than required by the FlSA or to follow the requirements of the FLSA even if the statutory requirements do not apply to the employer. It is certainly true that the FLSA only establishes a minimum floor that an employer is free to exceed. However, a contractual agreement to pay more than minimum wage or to provide overtime pay not required by the FLSA is a contractual obligation, not a statutory obligation. Such a distinction means that a violation of the promise supports a breach of contract claim for contractual damages, not a claim for violation of the FLSA that can be compensated with FLSA statutory penalties. See Rogers v. City of Troy, N.Y., 148 F.3d 52, 57 (2d Cir. 1998); Birdwell v. City of Gadsden, Ala., 970 F.2d 802, 806 (11th Cir. 1992). Plaintiffs cannot proceed on an FLSA claim directly based on a contractual promise to treat an employee as covered by the FLSA. Of course, to the extent the court continues to retain jurisdiction over the supplemental state law claims, plaintiffs may continue to pursue their breach of contract claim that they bring pursuant to the IWPCA.

Although plaintiffs may not pursue their FLSA claims directly based on the alleged contractual promise to pay overtime, it still must be considered whether defendant has waived the Motor Carrier Act exemption or is estopped from raising the exemption. Contrary to defendant's contention, the

limits on employees bargaining away their FLSA rights does not
apply to employers making promises that go beyond their
obligations[6] under the FLSA. Unlike the prohibition on
agreements under which covered employees are paid less than the
required minimum wage or overtime, there is no prohibition on
employers contracting with employees to pay them more than is
required by the FLSA or agreeing to pay overtime at time-and-one-
half even if the employee is not covered by the FLSA. Allowing
employers to waive or forfeit exemptions from FLSA coverage does
not violate the purposes and policies behind the FLSA. Such
waivers do not allow employers to pay less than the floor
required by the FLSA. Consistent with this view, FLSA exemptions
are affirmative defenses that must be raised and pleaded by the
employer in litigation. See Corning Glass Works v. Brennan,
417 U.S. 188, 196-97 (1974); Piscione v. Ernst & Young, L.L.P.,
171 F.3d 527, 533 (7th Cir. 1999); Austin v. CUNA Mutual
Insurance Society, 240 F.R.D. 420, 428 (W.D. Wis. 2006);
Norton v. Groupware International, Inc., 2007 WL 42955 *2 (M.D.
Fla. Jan. 4, 2007). More to the point, it has consistently been
held that FLSA exemptions may be waived by the employer if not

---

[6]Defendant refers to both employees and employers having
"rights" under the FLSA. That is an incorrect characterization.
Under the FLSA, covered employees have a right to receive a
minimum wage and time-and-one-half for overtime, while their
employers have an obligation to pay such rates. An exemption
from the obligation to pay such rates is not a right.

raised in litigation in a proper and timely manner. <u>See, e.g.</u>,
<u>Magana v. Commissioner of the Northern Mariana Islands</u>, 107 F.3d
1436, 1446 (9th Cir. 1997) (remanding case so that district court
could consider whether exemption raised on summary judgment
motion had been waived by failing to timely raise it as an
affirmative defense); <u>Renfro v. City of Emporia, Kan.</u>, 948 F.2d
1529, 1539 (10th Cir. 1991), <u>cert. denied</u>, 503 U.S. 915 (1992)
(upholding district court finding that exemption affirmative
defense was waived); <u>Norton</u>, 2007 WL 42955 at *2 (finding that
exemption affirmative defense was waived); <u>Tripodi v.</u>
<u>Microculture, Inc.</u>, 397 F. Supp. 2d 1308, 1317 (D. Utah 2005)
(same); <u>Rotondo v. City of Georgetown, S.C.</u>, 869 F. Supp. 369,
374 (D.S.C. 1994) (same). <u>See also</u> <u>Bergquist v. Fidelity</u>
<u>Information Services, Inc.</u>, 399 F. Supp. 2d 1320, 1324-26 (M.D.
Fla. 2005), <u>aff'd by unpublished order</u>, 197 F. App'x 813 (11th
Cir. 2006) (stating[7] that exemption affirmative defense can be
waived, but finding that defendant in the case did not engage in
conduct that would constitute waiver because the plaintiff was
not prejudiced); <u>Relyea v. Carman, Callahan & Ingham, L.L.P.</u>,
2006 WL 2577829 *1 n.1 (E.D.N.Y. Sept. 6, 2006) (same);
<u>Pellerin v. Xspedius Management Co. of Shreveport L.L.C.</u>, 432

---

[7]Because the court did not find conduct constituting
waiver, the statements and discussion that the exemption
affirmative defense can be waived may properly be characterized
as <u>dictum</u> since not essential to the resolution of the case.

- 16 -

F. Supp. 2d 657, 664-65 (W.D. La. 2006) (same); Schwind v. EW & Associates, Inc., 357 F. Supp. 2d 691, 697-98 (S.D.N.Y. 2005) (same). Although not finding the elements of estoppel to be proven, at least two cases have considered whether an employer was estoped from raising an exemption with there being no indication that estoppel cannot apply to an FLSA exemption. See Kautsch, 2007 WL 1459694 at *7; Bell v. Foster Poultry Farms, 2007 WL 896119 *3-6 (E.D. Cal. March 22, 2007).[8] To the extent all essential elements are present, estoppel or waiver can prevent an employer from raising an FLSA exemption. See Kautsch, 2007 WL 1459694 at *7; Bell, 2007 WL 896119 at *3-4.

Essentially, plaintiffs are raising waiver and promissory estoppel as defenses (or replies) to an affirmative defense (the Motor Carrier Act exemption). The burden of proving the elements of each such defense is on plaintiffs. See Paniaguas v. Aldon Companies, Inc., 2006 WL 2568210 *17 (N.D. Ind. Sept. 5, 2006);

---

[8]In Bell, 2007 WL 896119 at *6, the court also rejected a waiver contention based on prelitigation conduct. The exact basis for rejecting waiver is unclear: "Plaintiffs argue that the Motor Carrier Exemption can be waived, citing Brennen v. Valley Towing Co., 515 F.2d 100, 104 (9th Cir. 1975) and Donovan v. Hamm's Drive Inn, 661 F.2d 316, 317 (5th Cir. 1981). These cases are distinguishable because the defendant [sic] of the Motor Carrier Exemption was not raised in the pleading or trial. Plaintiffs argue that estopping defendant from asserting the defense is analogous to 'waiver' of the defense for failure to plead. Here, this Court is confronted with undisputed evidence that the Line Drivers were interstate workers. As such, the Line Drivers are statutorily not entitled to overtime."

- 17 -

Jordan v. Rubin, 2000 WL 682886 *7 n.2 (S.D. Ind. March 22, 2000), aff'd sub nom. by unpublished order, Jordan v. O'Neill, 28 F. App'x 548 (7th Cir. 2002); More v. Roadway Express, Inc., 1998 WL 456544 *2 (N.D. Ill. July 31, 1998), aff'd by unpublished order, 175 F.3d 1020 (7th Cir. 1999). Since plaintiffs have the burden of proving each defense, in response to summary judgment they must present sufficient evidence supporting at least a genuine factual dispute as to each element. See Celotex, 477 U.S. at 322; Jumer, 472 F.3d at 946.

Plaintiff relies on Illinois law, which permits raising promissory estoppel as a defense to prevent the opposing party from taking a contrary position. See Lipke v. Lipke, 2002 WL 31177920 *5 (N.D. Ill. Oct. 1, 2002); DeWitt v. Fleming, 357 Ill. App. 3d 571, 828 N.E.2d 756, 758 (5th Dist. 2005); ESM Development Corp. v. Dawson, 342 Ill. App. 3d 688, 795 N.E.2d 397, 401-02 (5th Dist. 2003). Defenses related to FLSA claims, however, would be governed by federal common law. Bell, 2007 WL 896119 at *3; Doing Steel, Inc. v. Castle Construction Corp., 2004 WL 432463 *4 n.7 (N.D. Ill. Feb. 18, 2004); Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 4516 at 504 (1996). But see Kautsch, 2007 WL 1459694 at *7 (applying Missouri estoppel law). The core elements of federal promissory estoppel are (a) a promise by the opposing party, (b) reliance on the promise by the

proponent of estoppel, (c) the proponent's reliance was
reasonable, and (d) the reliance caused a detriment to the
proponent. Cf. Shields v. Local 705, International Brotherhood
of Teamsters Pension Plan, 188 F.3d 895, 901 (7th Cir. 1999)
(ERISA promissory estoppel claim); Trustmark Life Insurance
Co. v. University of Chicago Hospitals, 207 F.3d 876, 883 (7th
Cir. 2000) (ERISA estoppel claim); Silva v. Fortis Benefits
Insurance Co., 437 F. Supp. 2d 819, 825 (N.D. Ill. 2006) (same).[9]
Illinois common law includes the additional requirements that the
promise be unambiguous and that the proponent's reliance be
expected and foreseeable by the opposing party. See Sembos v.
Philips Components, 376 F.3d 696, 704 (7th Cir. 2004); Lipke,
2002 WL 31177920 at *5 (quoting Gerson Electric Construction
Co. v. Honeywell, Inc., 117 Ill. App. 3d 309, 453 N.E.2d 726,
728 (1st Dist. 1983)). Since plaintiffs include these
requirements in their recitation of the elements of their
promissory estoppel defense, it will be assumed that they would
also be elements of a federal promissory estoppel defense. Cf.
Silva, 437 F. Supp. 2d at 825 (ERISA estoppel generally requires
unambiguous misrepresentation); Holy Cross Hospital v. Bankers

---

[9]In the ERISA context, the promise or representation must
be in writing. That requirement is based on a provision of ERISA
which requires that modifications of ERISA plans be in writing.
See Trustmark, 207 F.3d at 883. No similar statutory requirement
applies to plaintiffs' FLSA claims. In any event, the promises
that plaintiffs rely upon were made in writing.

- 19 -

Life & Casualty Co., 2002 WL 31507164 *8 (N.D. Ill. Nov. 12, 2002) (assuming without discussion that elements of Illinois common law promissory estoppel apply to claims under ERISA); Massaro v. Quality Synthetic Rubber, Inc., 2002 WL 31050161 *9 (N.D. Ill. Sept. 12, 2002) (same).

Defendant does not address whether plaintiffs have presented sufficient evidence to satisfy all the elements of promissory estoppel. Defendant instead relied on its argument that estoppel cannot prevent an employer from raising an FLSA exemption. As previously discussed, defendant's contention is without merit. However, there is an obvious deficiency in plaintiffs' proof of promissory estoppel. Plaintiffs contend they reasonably relied on unambiguous promises they would be paid overtime when they accepted employment with defendant,[10] which resulted in a detriment when they were not paid for all the overtime they worked. They contend foreseeability is established because defendant's Human Resources Director testified that he expected CE applicants to rely on promises of overtime pay when considering job offers.

_____

[10]Plaintiffs rely on the testimony of defendant's Human Resources Director regarding his expectation that employees would rely on the representations regarding overtime. Plaintiffs do not point to testimony from a named plaintiff or any other CE that a CE actually relied on the representations when deciding to accept a job offer. Such reliance, however, can be inferred from the evidence before the court.

The problem with plaintiffs' contention is that they fail
to take into account the distinction between a contractual right
to overtime pay and the statutory right to overtime pay. While
it is reasonable to infer that plaintiffs (and other CEs)
considered promises to pay overtime when accepting job offers,
there is no evidence supporting that plaintiffs relied on the
promise that they would be FLSA non-exempt and therefore also
have a statutory right to overtime pay. It cannot be assumed
that any plaintiff was knowledgeable enough about overtime
statutes to recognize that, beyond a contractual promise to pay
overtime, being non-exempt had the additional benefits of (a)
possible Labor Department enforcement, (b) potential statutory
penalties and attorney fees if defendant failed to pay overtime,
and (c) additional pressure on defendant to timely pay the
overtime or potentially be subject to statutory penalties. There
is insufficient evidence to infer that, in accepting their offers
of employment, plaintiffs relied on being non-exempt employees
subject to FLSA overtime requirements. Relying on a promise that
defendant would pay overtime does not establish the FLSA claim.
To the extent they prove such a promise, they will have a valid
contract claim for unpaid overtime that is distinct from any FLSA
claim. Plaintiffs have not met their summary judgment burden of

presenting sufficient facts supporting that defendant should be estopped from raising the Motor Carrier Act exemption.

Still to be considered is plaintiffs' waiver contention. Plaintiffs do not set forth the elements of waiver. Under federal common law, waiver is the "voluntary and intentional relinquishment or abandonment of a known existing right or privilege, which, except for such waiver, would have been enjoyed." Thomason v. Aetna Life Insurance Co., 9 F.3d 645, 647 (7th Cir. 1993) (quoting Buffum v. Chase National Bank of City of New York, 192 F.2d 58, 60-61 (7th Cir. 1951), cert. denied, 342 U.S. 944 (1952)). Since these elements are not satisfied, it need not be decided if there are additional elements as well. See id. at 648. Here, plaintiffs contend that defendant was previously unaware of the Motor Carrier Act exemption. Since the exemption was not a known right at the pertinent time, waiver cannot apply.

Plaintiffs' last contention is that the Motor Carrier Act exemption should only apply for particular work weeks in which the particular employee actually delivered an interstate shipment of a part. Such a week-by-week consideration does not apply in determining whether an employee falls under the Motor Carrier Act exemption. It is sufficient that, from time to time, the employee actually transports or is available to transport interstate shipments as part of the employee's regular course of

employment. See 29 C.F.R.§ 782.2; Badgett v. Rent-Way, Inc., 350 F. Supp. 2d 642, 654-57 (W.D. Pa. 2004); Elliot v. Dave Ernstes & Sons Trucking, 2006 WL 2849705 *5-6 (S.D. Ind. Oct. 3, 2006); Musarra, 454 F. Supp. 2d at 720. Rather than a week-by-week approach, the Department of Labor and Department of Transportation have applied a rule that an employee will be considered to be engaging in transportation in interstate commerce for four months after each proven incident of transporting a shipment in interstate commerce. See Badgett, 350 F. Supp. 2d at 657 (quoting and citing interpretative rulings and handbooks of the two Departments); Ballou v. DET Distributing Co., 2006 WL 2035729 *14 (M.D. Tenn. July 17, 2006). Plaintiffs transported interstate shipments as part of their regular duties and did so at least once every two weeks.[11]

The record supports that the Motor Carrier Act exemption applied prior to August 10, 2005. Nothing in the record adequately supports that defendant should be prevented from invoking the exemption. Therefore, plaintiffs' FLSA claims (Counts I, II, and III) will be limited to unpaid time and overtime that was worked on August 10, 2005 or later.

---

[11]It was even more often if some PPK replacement parts and returns are considered. Since the interstate shipment of the specially ordered parts is sufficient to support application of the exemption, no opinion is expressed regarding whether some PPK replacements and returns were also the continuation of interstate shipments.

Defendant contends that the exemption also applies to the IMWL claims since that statute generally tracks the FLSA. There, however, is a difference between the Motor Carrier Act exemption under the FLSA and a similar exclusion from the definition of employee under the IMWL. The pertinent provision in the IMWL provides:

> (d) "Employee" includes any individual permitted to work by an employer in an occupation, but does not include any individual permitted to work: . . .
> (7) For a motor carrier and with respect to whom the U.S. Secretary of Transportation has the power to establish qualifications and maximum hours of service under the provisions of Title 49 U.S.C. or the State of Illinois under Section 18b-105 (Title 92 of the Illinois Administrative Code, Part 395--Hours of Service of Drivers) of the Illinois Vehicle Code.

820 ILCS 105/3(d)(7).[12]

Defendant fails to recognize that the IMWL exclusion has an additional requirement. Unlike the FLSA exemption, the IMWL exclusion also requires that the employee work for a "motor carrier." Motor carrier was defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12) (2002).[13] Defendant does not contend that it was a motor

_____

[12]Defendant does not contend the exclusion should be applied based on the Illinois Vehicle Code. Even if it did, the discussion below would still apply.

[13]Effective August 10, 2005, language was added to the definition of "motor carrier" that was identical to that added to

- 24 -

carrier. Therefore, there is no sufficient showing that the
Motor Carrier Act exclusion is applicable to plaintiffs' IMWL
claim. The IMWL claim contained in Count IV will not be limited
to overtime worked August 10, 2005 or later. Neither does any
Motor Carrier Act exclusion apply to the IWPCA contract claim
contained in Count V. See 820 ILCS 115/2 (definition of
employer & employee under the IWPCA). The time period covered
by the state law claims are only limited by the applicable
statute of limitations.[14]

Defendant also contends that it is entitled to summary
judgment dismissing claims based on overtime for on-call time.
Plaintiffs did not respond to this aspect of the summary judgment
motion. Even when the opposing party fails to respond to a
motion for summary judgment, summary judgment may not be

the definition of "motor private carrier." "The term 'motor
carrier' means a person providing commercial motor vehicle (as
defined in section 31132) transportation for compensation."
49 U.S.C. § 13102(14) (2005).

[14]A three-year limitation period applies to the IMWL
claim. 820 ILCS 105/12(a). The statute of limitations for the
IWPCA claim is the ten-year limitation applicable to written
contracts. See 735 ILCS 5/13-206. Cf. Clark v. Western Union
Telegraph Co., 141 Ill. App. 3d 174, 490 N.E.2d 36 (1st Dist.
1986) (applying five-year limitation period for oral contract
to an IWPCA claim based on an oral contract). A five-year
limitation period would apply to the promissory estoppel claim.
See 735 ILCS 5/13-205; Chicago Limousine Service, Inc. v. City
of Chicago, 335 Ill. App. 3d 489, 781 N.E.2d 421, 428-29 (1st
Dist. 2002).

- 25 -

automatically granted based on default, but only if summary
judgment is appropriate.  Fed. R. Civ. P. 56(e); Raymond v.
Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006).  Taking the
facts presented by defendant as true, it still must be considered
whether those facts entitle defendant to judgment as a matter of
law.  Id.

On-call time is not required to be compensated under
the FLSA if "the employee can 'use the time effectively for
personal pursuits.'"  Dinges v. Sacred Heart St. Mary's
Hospitals, Inc., 164 F.3d 1056, 1058 (7th Cir. 1999) (quoting
29 C.F.R. § 553.221(d)).  The facts taken as true establish that,
while on-call, CEs can use their time effectively for personal
pursuits.  Cf. id. at 1057-59.  The FLSA claims will be dismissed
to the extent based on inadequately compensated on-call time.
Under the IMWL, an employee's "time spent on-call away from
his/her employer's premise are compensable hours worked when such
time is spent predominantly for the benefit of the employer,
rather than for the employee."  56 Ill. Admin. Code § 210.110
(2006). The evidence supports that time spent on-call was not
predominantly for the benefit of the employer.  The IMWL claim
will be dismissed to the extent it is based on inadequately
compensated on-call time.  Since there is no evidence of an
agreement to treat on-call time as overtime, the IWPCA claim will

- 26 -

also be dismissed to the extent it is based on inadequately compensated on-call time.

Next to be considered is whether plaintiffs should be permitted to amend their complaint to add a supplemental state law claim of promissory estoppel (Count VI of the proposed Amended Complaint). Defendant contends no cognizable claim is stated because the prayer for relief only seeks a declaration that defendant be "estopped from asserting any argument or theory that would deny Plaintiffs the benefits and entitlements of the promises Defendant made." Defendant contends such a declaration is actually a defense (reply) to defendant's defenses that does not have to be pleaded and that promissory estoppel cannot be raised as a defense, only equitable estoppel. These contentions are without merit on a number of grounds.

Plaintiffs also request "such other relief the Court deems appropriate." Regardless, plaintiffs would not be limited by the relief requested in the prayer for relief. See Fed. R. Civ. P. 54(c); Chicago United Industries, Ltd. v. City of Chicago, 445 F.3d 940, 948 (7th Cir. 2006); Felce v. Fiedler, 974 F.2d 1484, 1501 (7th Cir. 1992); Health Cost Controls of Illinois, Inc. v. Washington, 1996 WL 252552 *5 (N.D. Ill. May 10, 1996); In re Joy Recovery Technology Corp., 291 B.R. 111, 116-17 (Bankr. N.D. Ill. 2003). Also, the majority view is that promissory estoppel may be asserted as either affirmative relief

or a defense. See Kamboj v. Eli Lilly & Co., 2007 WL 178434
*9-10 (N.D. Ill. Jan. 18, 2007).[15] Defendant's attempt to
characterize plaintiffs' claim as one for equitable estoppel is
also misplaced since such a claim requires a knowing
misrepresentation, see Recio v. GR-MHA Corp., 366 Ill. App. 3d
48, 851 N.E.2d 106, 119 (1st Dist.), appeal denied, 221 Ill. 2d
673, 857 N.E.2d 684 (2006); Franck v. Farmers New World Life
Insurance Co., 445 F. Supp. 2d 954, 963-64 (N.D. Ill. 2006), and
there is no allegation of such a misrepresentation.

Under Illinois law, the elements of promissory estoppel
are: "(1) defendants made an unambiguous promise to plaintiff,
(2) plaintiff relied on such promise, (3) plaintiff's reliance
was expected and foreseeable by defendants, and (4) plaintiff
relied on the promise to its detriment." Dumas v. Infinity
Broadcasting Corp., 416 F.3d 671, 677 (7th Cir. 2005) (quoting
Quake Construction, Inc. v. American Airlines, Inc., 141 Ill. 2d
281, 565 N.E.2d 990, 1004 (1990)). Plaintiffs have alleged facts
supporting all these elements. On summary judgment, plaintiffs
failed to present sufficient facts supporting that they relied on

---

[15]Contrary to defendant's contention that promissory
estoppel may only be raised as affirmative relief, the Illinois
Appellate Court for the Fifth District holds that promissory
estoppel may only be raised as a defense. See DeWitt, 858 N.E.2d
at 758-60. It is a minority view that promissory estoppel may
not also be raised as affirmative relief and defendant does not
take that position.

- 28 -

promises of being non-exempt under the FLSA. That does not mean that it would be futile to permit plaintiffs to proceed on their promissory estoppel claim. The promissory estoppel claim in the proposed amended complaint is based on the direct promise to pay overtime, not a promise of FLSA coverage. It is pleaded as an alternative claim in the event plaintiffs are unable to prove their IWPCA contract claim because of a lack of consideration or other possible reasons. Plaintiffs will be granted leave to file the Amended Complaint.

Having determined the claims upon which plaintiffs may proceed, the motion for collective and class proceedings will now be considered. It will first be considered whether plaintiffs should be permitted to send notice of an FLSA collective action. Since any remaining FLSA claims of Spencer and Molina are limited to a short period of time, resolution of the issue should focus on Bliznick as the lead plaintiff.

Federal Rule of Civil Procedure 23 does not apply to the FLSA claims. Any collective action[16] is limited by the provision of 29 U.S.C. § 216(b) which requires that any plaintiff joined in this action consent to be a plaintiff, that is, any additional plaintiffs must opt in. King v. General Electric Co., 960 F.2d

_____

[16]Actions pursuant to § 216(b) are often referred to as "collective" or "representative" actions, not "class" actions. See Veerkamp v. U.S. Security Associates, Inc., 2005 WL 775931 *1 (S.D. Ind. March 15, 2005).

- 29 -

617, 621 (7th Cir. 1992); Flores v. Lifeway Foods, Inc., 289
F. Supp. 2d 1042, 1043-45 (N.D. Ill. 2003). In appropriate
circumstances, the court may order that notice be sent to
potential class members advising them of the option of joining in
the case. See Woods v. New York Life Insurance Co., 686 F.2d
578, 580 (7th Cir. 1982). Generally, to be entitled to have such
notice sent, plaintiffs first must make "a modest factual showing
sufficient to demonstrate that they and potential plaintiffs
together were victims of a common policy or plan that violated
the law." Flores, 289 F. Supp. 2d at 1044 (quoting Taillon v.
Kohler Rental Power, Inc., 2003 WL 2006593 *1 (N.D. Ill.
April 29, 2003)). See also Infantino v. Martam Construction,
Inc., 2005 WL 3132362 *1 (N.D. Ill. July 18, 2005); Veerkamp v.
U.S. Security Associates, Inc., 2005 WL 775931 *2 (S.D. Ind.
March 15, 2005); Nunez v. Pizza Nova, Inc., 2003 WL 23150111 *1
(N.D. Ill. Dec 30, 2003); Champneys v. Ferguson Enterprises,
Inc., 2003 WL 1562219 *4 (S.D. Ind. March 11, 2003); Bontempo v.
Westwood One Broadcasting Services, Inc., 2002 WL 1925911 *1
(N.D. Ill. May 3, 2002); Garza v. Chicago Transit Authority,
2001 WL 503036 *2 (N.D. Ill. May 8, 2001). The other employees
need not be in the same identical job or situation. Grayson v.
K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996); Champneys,
2003 WL 1562219 at *5; Bontempo, 2002 WL 1925911 at *1; Garza,
2001 WL 503036 at *3; Flavel v. Svedala Industries, Inc.,

- 30 -

875 F. Supp. 550, 553 (E.D. Wis. 1994). Unless defendant admits
in its answer or briefs that other similarly situated employees
exist, plaintiffs cannot rely on their allegations alone to make
the required modest factual showing. Plaintiffs need not provide
conclusive support, but they must provide an affidavit,
declaration, or other support beyond allegations in order to make
a minimal showing of other similarly situated employees subjected
to a common policy.

The initial step in permitting a collective action is to
decide whether to issue an opt-in notice based on whether
plaintiffs can make a modest factual showing of being similarly
situated. After discovery has been completed, the issue of
permitting the collective action to continue may be raised by
defendant at which point it will be considered whether the
plaintiffs who have joined in the case at that point are all
similarly situated. At the second stage, the issue will be
decided on a more complete factual record and the burden placed
on plaintiffs will no longer be limited to a modest showing. See
Thiessen v. General Electric Capital Corp., 267 F.3d 1095,
1102-03 (10th Cir. 2001), cert. denied, 536 U.S. 934 (2002);
Flores, 289 F. Supp. 2d at 1045 (quoting Belbis v. County of
Cook, 2002 WL 31600048 *4 (N.D. Ill. Nov. 18, 2002)); Infantino,
2005 WL 3132362 at *1; Veerkamp, 2005 WL 775931 at *2. Defendant
contends this court should proceed directly to the second step

because plaintiffs have already engaged in significant discovery
in this case. While the availability of that discovery provides
some support for defendant's position, other factors counsel
against leaping directly to the second step. The parties do not
yet have all the evidence that would be available at the
conclusion of discovery in the present case. More importantly,
it is not yet known who else may attempt to join this lawsuit.
It may be that few others choose to opt in. Or it may turn out
that it will be appropriate to continue with some, but not all,
of the additional plaintiffs that opt in. Or it may turn out
that it is appropriate to have subclasses of plaintiffs or a few
separate law suits. None of that can be known at this time. Any
second-step determination is best made in light of who is
actually in the case. See Rochlin v. Cincinnati Insurance Co.,
2003 WL 21852341 *16 (S.D. Ind. July 8, 2003). The "modest"
factual showing standard will still be applied, but it will be
applied in light of the record that is before the court on the
pending motion. See Vander Vennet v. American Intercontinental
University Online, No. 05 C 4889, Docket Entry 26 at 17-18 (N.D.
Ill. Dec. 22, 2005).[17] Thus, plaintiffs must at least "modestly"
overcome any contrary evidence submitted by defendant.

_____

[17]A copy of this opinion is available electronically on
this court's CM/ECF system.

- 32 -

To proceed on a § 216(b) collective action, there must be similarly situated employees, which includes being subjected to a common policy. This standard has been held to be less stringent than that required for joinder of parties under Fed. R. Civ. P. 20(a) ("any right to relief . . . in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action"). Grayson, 79 F.3d at 1096; Hipp v. Liberty National Life Insurance Co., 252 F.3d 1208, 1219 (11th Cir. 2001), cert. denied, 534 U.S. 1127 (2002); Mahaffey v. Amoco Corp., 1997 WL 24712 *1 (N.D. Ill. Jan. 17, 1997); Flavel, 875 F. Supp. at 553. There must be a demonstrated similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws must be present. Garza, 2001 WL 503036 at *2; Mahaffey, 1997 WL 24712 at *1 (quoting Heagney v European American Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)); Sheffield v. Orius Corp., 211 F.R.D. 411, 416 (D. Or. 2002). A unified policy, plan, or scheme, though, is not necessarily required to satisfy the similarly situated requirement, especially if a collective action would promote judicial economy because there is otherwise an identifiable factual or legal nexus. See Grayson, 79 F.3d at 1095; Hipp,

252 F.3d at 1219; <u>Mielke v. Laidlaw Transit, Inc.</u>, 313

F. Supp. 2d 759, 763 (N.D. Ill. 2004); <u>Sheffield</u>, 211 F.R.D.

at 416; <u>Reed v. Mobile County School System</u>, 246 F. Supp. 2d

1227, 1234 n.11 (S.D. Ala. 2003); <u>Marsh v. Butler County School</u>

<u>System</u>, 242 F. Supp. 2d 1086, 1092-93 (M.D. Ala. 2003).

The § 216(b) provision applies to statutory claims other

than FLSA claims. Section 216(b) also applies to discrimination

cases under the Age Discrimination in Employment Act ("ADEA"),

<u>see</u> 29 U.S.C. § 626(b), and Equal Pay Act, <u>see</u> 29 U.S.C.

§ 206(d); <u>Lifrak v. New York City Council</u>, 389 F. Supp. 2d 500,

503 (S.D.N.Y. 2005). Many of the reported cases involving

collective actions pursuant to § 216(b) are ADEA cases. Whether

a defendant was motivated by a discriminatory animus, as is

generally required for an age discrimination claim, is often an

individualized, fact-intensive inquiry. An FLSA claim generally

will not involve the same sort of issues as to a defendant's

mental state as does an ADEA claim and therefore an FLSA case

would be more likely to be amenable to a collective procedure

than an ADEA case. In an ADEA case, whether there is a common

practice or policy may be particularly important because it may

take certain individualized motivation issues out of the case.

<u>See, e.g.</u>, <u>Thiessen</u>, 267 F.3d at 1105-08 (in decertifying an ADEA

collective action, the district court failed to take into account

- 34 -

that plaintiffs were pursuing a pattern-or-practice claim that alters the burdens on the parties).

Factors that may be considered in determining whether plaintiffs are similarly situated include: (a) similarities and differences in the employment and other factual settings of the various plaintiffs, including whether plaintiffs had differing job titles or assignments, worked in different locations, were under different supervisors or decisionmakers, or allege different types of violative conduct; (b) the extent to which the plaintiffs will rely on common evidence; (c) defenses available to defendant and whether the defenses are individual to each plaintiff; and (d) fairness and procedural considerations, including whether a trial may be coherently managed in a way that will not confuse the jury or unduly prejudice a party. See Thiessen, 267 F.3d at 1103; Mielke, 313 F. Supp. 2d at 762; Koren v. SUPERVALU, Inc., 2003 WL 1572002 *16 (D. Minn. March 14, 2003); Reed, 246 F. Supp. 2d at 1232 (quoting Stone v. First Union Corp., 203 F.R.D. 532, 542-43 (S.D. Fla. 2001)); Wynn v. National Broadcasting Co., 234 F. Supp. 2d 1067, 1083-84 (C.D. Cal. 2002).[18]

---

[18]Although some courts refer to these factors as being pertinent to the analysis applied at the second step, there is no good reason to distinguish between the factors that may be considered at the first and second step. The primary difference between the two stages of the litigation is the level of proof required. Also, at the first step, information about particular

Defendant is a nationwide company. It has five different districts. The Midwest District has five territories, each centered in a different city. One territory is based in Chicago and is the territory in which all three named plaintiffs worked. The Chicago territory is also broken up into regions. Each district has a manager, each territory has a manager, and there are supervisors of CEs within each territory.

In their opening brief at 3, plaintiffs indicate that, elsewhere in the brief, they will discuss "in more detail" that CEs throughout the country were subjected to the same kind of policies regarding being paid for meal breaks and before and after shifts ("nonshift time"). No such discussion is contained in the brief nor is there a citation to any supporting documentation. In answer to plaintiffs' motion, defendant concedes that each of the named plaintiffs testified that they had worked lunch and nonshift time without being compensated.[19] Defendant points out, however, that the three named plaintiffs all worked in the Chicago territory. There is no specific evidence of the same practices occurring outside the Chicago

factors may not be available at all or may not be very well developed.

[19]Defendant points to testimony from Spencer that once or twice his supervisor approved pay for work at lunchtime. Spencer Dep. at 30. However, he also testified that the general practice was that he would not be paid for such work. See id. at 29.

territory. In their reply, plaintiffs contend the testimony of defendant's Human Resources Director that they relied on in responding to summary judgment establishes that policies were implemented on a national basis. That evidence, however, concerns establishing uniform job descriptions and pay scales, including the decision to classify CEs as non-exempt. That testimony does not include any evidence regarding pay for lunchtime and nonshift time work. The only evidence that is before the court is that three Chicago territory CEs (the named plaintiffs) worked such time without being compensated.

Although the three named plaintiffs all worked in the Chicago territory, they each worked under different managers. Spencer, if not the others as well, had the same experience under multiple managers. See Spencer Dep. at 29. Spencer also testified that his supervisor's manager (presumably the territory manager) removed lunchtime work from his timecard. Id.[20] This supports that the practice was not limited to just one employee.

_____

[20]Even if this testimony is hearsay that could not be considered at trial, it may be considered in deciding whether to permit a collective action. See White v. MPW Industrial Services, Inc., 236 F.R.D. 363, 367-68 (E.D. Tenn. 2006); Coan v. Nightingale Home Healthcare, Inc., 2005 WL 1799454 *1 n.1 (S.D. Ind. June 29, 2005); O'Neal, 2007 WL 956428 at *5; Crawford v. Lexington-Fayette Urban County Government, 2007 WL 293865 *2 (E.D. Ky. Jan. 26, 2007); Aguayo v. Oldenkamp Trucking, 2005 WL 2436477 *4 (E.D. Cal. Oct. 3, 2005). Contra Mares v. Caesars Entertainment, Inc., 2007 WL 118877 *3 (S.D. Ind. Jan. 10, 2007) (collecting cases).

On the low standard that must be satisfied at this point in the
litigation, there is enough evidence to infer that the practice
was common in the Chicago territory. There is no indication that
plaintiffs have had the opportunity to depose any employees,
supervisors, or territory managers outside the Chicago territory
but they have deposed the national Human Resources Director and
the manager of the Midwest district. Plaintiffs do not point to
any sufficient evidence in either of those depositions to support
that the same lunchtime and nonshift time practices existed in
other territories. Also, since Bliznick (and the other named
plaintiffs) worked in the Chicago territory, it is appropriate to
limit any notice to the Chicago territory.

Defendant contends there are distinctions among CEs that
prevent Bliznick from being similarly situated to all other CEs.
Apparently, each team of CEs has a lead technician. The lead
technician is not a manager, but has additional paperwork
obligations, some of which he or she may perform during lunchtime
or nonshift time. That is not a significant difference regarding
this litigation. The issue will still be whether any work was
performed during those times that was not compensated.
Similarly, the fact that some CEs only repair or install
particular types of equipment is not a significant difference for
purposes of this litigation. The evidence supports that all CEs
had sufficiently similar job duties.

Defendant also contends that CEs are not similarly situated because the determination of whether particular CEs were improperly compensated will depend on fact-specific determinations involving knowledge or intent. Defendant contends that claims will turn on the question of whether supervisors were aware each time an individual CE performed uncompensated work during lunch or nonshift time. The deposition testimony, however, supports that CEs were instructed by supervisors not to claim such time. That is not a type of claim that requires more individualized consideration than the usual FLSA claim.

This is an appropriate case for permitting an opt-in notice. The notice will be sent to all CEs who worked in the Chicago territory during any time from August 10, 2005 until the date of today's ruling. Within two weeks, defendant shall provide plaintiffs with a list of all such employees and their last known address.

Still to be considered is whether a Rule 23(b)(3) class action should be certified as to the supplemental state law claims. Regardless of whether the Rule 23 requirements are otherwise satisfied, such a class will not be certified. The FLSA claims are limited to August 10, 2005 and later. The statute of limitations for the state law claims, though, would be three, five, and ten years prior to the filing of this lawsuit. Therefore, the class potentially certifiable under Rule 23 covers

a much longer period of time than the persons entitled to the
216(b) notice. This would likely result in there being more
members of the Rule 23 class than persons with FLSA claims. Cf.
de la Cruz v. Gill Corn Farms, Inc., 2005 WL 5419056 *7 (N.D.N.Y.
Jan. 25, 2005). Under that scenario, the supplemental state law
claims would substantially predominate over the federal
claims, which is inappropriate. See 28 U.S.C. § 1367(c)(2);
De Ascensio v. Tyson Foods, Inc., 342 F.3d 301, 311 (3d Cir.
2003); Harper v. Yale International Insurance Agency, Inc.,
2004 WL 1080193 *5 (N.D. Ill. May 12, 2004); de la Cruz, 2005 WL
5419056 at *7. Even if the Rule 23 class were also limited to
CEs employed on August 10, 2005 or later, the supplemental claims
would likely still predominate. Plaintiffs are correct that a
Rule 23 opt-out class is likely to be substantially larger than a
§ 216(b) opt-in collective action. Cf. De Ascensio, 342 F.3d at
310; Roe-Midgett v. CC Services, Inc., 2006 WL 726252 *2 (S.D.
Ill. March 16, 2006). Under that circumstance, the supplemental
claims would still predominate over the federal FLSA claims. Cf.
Roe-Midgett, 2006 WL 726252 at *2; de la Cruz, 2005 WL 5419056
at *7. Compare Acosta v. Scott Labor LLC, 2006 WL 27118 (N.D.
Ill. Jan. 3, 2006). In order to avoid that problem, the court
declines to certify a Rule 23 class. However, any plaintiffs who
do opt in will still be permitted to pursue the state law claims
and will not be prevented from pursuing those claims for the

entire time period that may be appropriate in light of the applicable statutes of limitations and the facts disclosed during discovery.

Plaintiffs have submitted a proposed notice, but that notice has to be substantially revised in light of the denial of Rule 23 class certification. Revisions also need to take into consideration today's rulings regarding the time period covered and the dismissal of the on-call claims. The notice should include an appropriate description of the supplemental state law claims as well. In revising the notice, plaintiffs should refer to the notices approved in Ponce v. Tim's Time, Inc., 2004 WL 1921038 *2-4 (N.D. Ill. July 8, 2004), and Vander Vennet, No. 05 C 4889, Docket Entry 26, Appendix, for guidance. Plaintiffs should also seek comments from defendant regarding a revised version of the notice. Within two weeks, plaintiffs shall file a revised version of the proposed notice.

IT IS THEREFORE ORDERED that defendant's motion for partial summary judgment [36] is granted in part and denied in part. Plaintiffs' motion to file First Amended Complaint [41] is granted. Plaintiffs' motion to certify class [53] is granted in part and denied in part. Plaintiffs' on-call claims are dismissed and the FLSA claims are limited to work performed August 10, 2005 or later. Within two weeks, defendant shall answer the First Amended Complaint and provide plaintiffs with a

list of Chicago territory CEs who worked August 10, 2005 or
later. Within two weeks, plaintiffs shall file a revised
proposed notice for opt-ins. A status hearing will be held on
July 25, 2007 at 11:00 a.m.

ENTER:

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED:  JUNE $28$, 2007